UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANGELO IAFRATE, SR.; DOMINIC IAFRATE; ANGELO IAFRATE, SR. AS TRUSTEE OF THE JOHN IAFRATE IRREVOCABLE TRUST u/a/d 1/1/1988 | * * * * * | |
| Plaintiffs | * * | |
| vs. | * * | CIVIL ACTION NO. 2:18-cv-12028-BAF-APP |
| WARNER, NORCROSS & JUDD, LLP, | * * | |
| Defendants | * | |

| | | |
|---|---|---|
| Lawrence J. Acker (P28123) Attorney for Plaintiffs LAWRENCE J. ACKER, P.C. 44 East Long Lake Road Bloomfield Hills, MI 48304 248-594-7277 | | |
| Steven M. Hickey (P33142) Attorney for Plaintiffs HICKEY CIANCIOLO FINN & ATKINS, P.C. 901 Wilshire Drive, Suite 550 Troy, MI 48084 248-247-3318 | | |

**FIRST AMENDED COMPLAINT & DEMAND FOR JURY TRIAL PURSUANT TO FRCP 15(a)**

**THE PARTIES AND DIVERSITY OF CITIZENSHIP JURISDICTION**

1.      Angelo Iafrate, Sr. is an individual who resides in the State of Florida.

2.      Dominic Iafrate is an individual who resides in the State of Florida.

3.      Angelo Iafrate, Sr. is the Trustee of the John Iafrate Irrevocable Trust u/a/d 1/1/1988 (the "John Iafrate Trust"). The Trustee resides in Florida; the Trust is administered in the State of Florida.

4.     Warner Norcross & Judd, LLP is a law firm, organized pursuant to the laws of the State of Michigan, maintaining offices exclusively within the State of Michigan. The law firm maintains one of its principal office locations within the Eastern District.  All of the office locations and partners of Warner Norcross & Judd, LLP are resident in the State of Michigan. There are no partners of Warner Norcross & Judd domiciled or resident in the State of Florida. Therefore, diversity jurisdiction as alleged in paragraph 5 is appropriate; diversity is complete.

5.     This Court has original jurisdiction over the claims against Warner Norcross & Judd pursuant to 28 U.S.C. §1332, because Plaintiffs and Defendants are diverse in citizenship and the amount in controversy exceeds $75,000.

6.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. §1391(b), because it is the district in which the Defendants maintain residence and in which the actions significant to these claims took place.

### RELEVANT FACTUAL SUMMARY

7.     Plaintiffs were associated with a Michigan domiciled business, the Angelo Iafrate Construction Company ("AICC") which maintained offices in the Detroit Metropolitan Area.

8.     The Shareholders of AICC, as of 2010 were limited to:

    a.  Angelo Iafrate, Sr.

    b.  Dominic Iafrate

    c.  John Iafrate; and

    d.  Angelo E. Iafrate

[John Iafrate's shares were transferred into the John Iafrate Trust and were held in that manner as of 2010.]

2

9.      In the decade commencing in 2000, Angelo Iafrate, Sr., Dominic Iafrate, and John Iafrate moved to Florida to work for other family-owned business enterprises.  Plaintiffs established personal residency in Florida, and discontinued their active affiliation with the Michigan based AICC daily business activities, except as shareholders.

10.      AICC remained domiciled in Michigan and one of the principal shareholders, Angelo E. Iafrate (not named as a party plaintiff in this litigation, as explained below), remained in Michigan, conducted the business of AICC, and was the President and sole Director of AICC for a number of years.

11.      Commencing in 2011, the Plaintiffs began to discuss prospects for the sale of AICC, in order to receive for the family equity holders, fair and appropriate financial compensation for their shareholder interest in AICC.

12.      During the early exploration of options for sale of AICC for the benefit of its shareholders, the Plaintiffs entertained the potential of forming an Employee Stock Ownership Plan. ("ESOP").

13.      Early in February 2013, Plaintiffs formed a relationship with Attorney Justin Stemple of the Defendant Warner Norcross & Judd, by approaching him regarding the possibility of forming an ESOP and entertaining legal advice and counsel regarding other options for the sale of the AICC corporate entity to third parties.

14.      Attorney Stemple was engaged, established an attorney-client relationship with each of the Plaintiffs individually, and began conversations and furnishing advice regarding tax advantages, ESOP formation, and other options for converting the equity value of the AICC organization, exclusively owned by family members, into cash remuneration.

3

15.     During this period of time, early in 2013 when the attorney-client relationship was being established, the shareholders desired to avoid adverse publicity regarding the prospects for sale of the business and/or the prospects for formation of an ESOP.

16.     Toward that end, the parties agreed that invoices for services furnished by the Warner Norcross & Judd law firm would be delivered to Michael Stefani, of Stefani & Stefani, P.C. (of Royal Oak, Michigan) and that the invoices would be the responsibility of AICC and its controlling shareholders, all of whom were Iafrate family members. Stefani was identified, and known to Warner Norcross & Judd, as the "personal counsel" for the Iafrate family. An Engagement Agreement was tendered to AICC by and between AICC and Warner Norcross & Judd, drafted by and under the name of Attorney Vernon P. Saper.

17.     Early in the engagement, and throughout the course of the engagement, it was clearly understood that Warner Norcross & Judd was furnishing legal representation to the individual Plaintiffs. Line item entries in the invoices furnished to Mr. Stefani included references to the ESOP formation, as well as advice and counsel on individual matters to individual Plaintiffs on a variety of topics, including tax counseling and related family issues.

18.     On advice of Warner Norcross & Judd, the structure of the ESOP formation included:

- Plaintiffs contributed all of their stock in AICC to "Newco", established in the State of Michigan;
- Newco formed an ESOP, which then purchased all of the Plaintiffs shares in Newco for an established purchase price;
- 100% of the purchase price was provided by Seller financing in the form of a loan from the Iafrate family shareholders to the ESOP (the "ESOP loan").

19.     The closing transaction occurred on December 6, 2013.

4

20.     As part of the closing events, the ESOP Loan was assigned from the ESOP to, and assumed by, Angelo Iafrate, Inc. (Newco). Newco in turn immediately refinanced the ESOP Loan with Plaintiffs, and furnished to each of the Plaintiffs a Senior Promissory Note, a Junior Note, and issued Common Stock Warrants. The intent of all parties to the contract(s) established that the total purchase price and valuation for the acquired shares was represented by a combination of value to be received, including the Senior Note payments, the Junior Note payments and the realization of the value represented by the Warrants.

21.     During these transactions, Warner Norcross & Judd furnished advice and counsel to Angelo Iafrate, Inc., to the Angelo Iafrate, Inc. Employee Stock Ownership Plan (the ESOP) as it was formed, and to each of the individual Plaintiffs.

22.     Warner Norcross & Judd did not secure waivers of conflict of interest from any of the parties to this transaction.

23.     Most notably, Warner Norcross & Judd did not seek to obtain waivers from any of the named Plaintiffs in conjunction with any of these transactions.

24.     As these transactions were nearing closing day in December 2013, Warner Norcross & Judd, through Draftor Attorney Justin Stemple, prepared and provided to the Plaintiffs an "Intercreditor Agreement" in which the only participants were Iafrate family members and, specifically, Angelo Iafrate, Sr., Dominic Iafrate, and Angelo Iafrate, Sr. as Trustee of the John Iafrate Irrevocable Trust u/a/d 1/1/1988. The other signator and participant in the Intercreditor Agreement is and was Angelo E. Iafrate[1]

---

[1] Angelo E. Iafrate is not a party Plaintiff to this litigation.

5

25.     Email communications with individual family members bore the legend "attorney-client privileged".  Email communications exchanged between Justin Stemple and Mike Stefani, related to family interests and Plaintiffs' realization of full compensation for their equity interest in AICC bore the legend "attorney-client privileged".

26.     When the Intercreditor Agreement was circulated to the Plaintiffs, it bore the legend "attorney-client privileged".

27.     For a variety of reasons having to do with the establishment of the relationship, the communication between the parties, the payment of Warner Norcross & Judd invoices, and similar topics, the individual Plaintiffs indisputably perceived, and acted upon the perception, that Warner Norcross & Judd attorneys represented them individually and were protecting their personal interest in the transactions that were being proposed and, ultimately, effectuated.

28.     All such separate email communications, advice and counsel afforded to the Plaintiffs was accomplished with the designation on those communications "attorney client privileged", a designation that originated from Warner Norcross & Judd.

29.     Warner Norcross & Judd employees (attorneys) made an effort to distinguish between advice furnished to the project at large and advice furnished to individual family members and shareholders.

30.     Warner Norcross & Judd never counseled that the family members should obtain independent counsel with subject matter expertise in ESOP transactions to represent their individual interests in these transactions.

6

31.     Warner Norcross & Judd never identified the need for other qualified ESOP counsel to independently evaluate the Intercreditor Agreement drafted by Warner Norcross & Judd.

32.     Warner Norcross & Judd attorneys knew that Mr. Stefani was acting as personal counsel for the family members and also knew, as a consequence of numerous meetings and consultations, that Mr. Stefani did not consider himself an expert in matters involving ESOP planning and, therefore, was not qualified and did not provide independent advice regarding ESOP matters, the sale of the business, the terms of the Intercreditor Agreement, and the operation of the Senior Promissory Note, the Junior Promissory Note and the Warrant.

33.     Drafting of the Intercreditor Agreement is a significant indicator of the attorney-client relationship established between Warner Norcross & Judd and the individual Plaintiffs.

34.     The Intercreditor Agreement did not benefit the ESOP, did not benefit Newco, and did not benefit shareholders in the ESOP.

35.     The Intercreditor Agreement was intended to only benefit and provide for establishment of inter-relationships between the family members, including each of the individual Plaintiffs named in this Complaint.

36.     In addition to the Intercreditor Agreement, Warner Norcross & Judd lawyers, primarily Mr. Stemple, weighed in on tax matters that exclusively impacted the individual Plaintiff family members, such as the interplay and tax consequences between S Corp status and C Corp status, in hypothetical circumstances related to the disposition of family held shares as they were transferred and/or sold into Newco.

37.     These communications, as described in the above paragraph, were not shared with the administrators of the ESOP nor the principals of the ESOP but were, instead, only shared with personal counsel Mike Stefani and individual family members.

38.     Because Stemple understood that he was providing services exclusively on some of these topics to family members, and because these issues impacted only individual family members, he exercised caution to preserve the information from disclosure to third parties by labelling them with the "attorney client privileged" designation.

39.     After the December 2013 closing of the ESOP transaction, Attorney Stemple, and other employees of Warner Norcross & Judd, continued to offer services exclusively to family members including, by way of example, assistance with Federal Section 1042 Election Forms and advice regarding the content of those forms.

**THE CURRENT DISPUTE**

40.     Plaintiffs have recently filed litigation against Angelo Iafrate, Inc. (Newco; ESOP corporate entity) and Robert Adcock (an Officer of Angelo Iafrate, Inc. [the ESOP entity]) in United States District Court for the Eastern District of Michigan Southern Division, Action No. 2:18-cv-11150-AJT-RSW assigned to the Honorable Arthur J. Tanow.

41.     The basis of the related action is Plaintiffs' effort to obtain a money damages judgment against Angelo Iafrate, Inc. and Angelo Iafrate, Inc. Employee Stock Ownership Plan.

42.     In significant part, the company relies upon a claim that the individual Plaintiffs have not "exercised" their Warrants by processing elections at the point in time at which their Senior Notes and Junior Notes were allegedly paid in full.

8

43. As described in the related Complaint, Plaintiffs contend that the ESOP entity has violated the terms of the Warrants as well as the terms of the Intercreditor Agreement and that the ESOP entity is ultimately responsible to honor the Warrants and to pay each of the Plaintiffs, in full, for the actual value of the Warrants as determined in accordance with the Prayer for Relief in the related litigation.

44. This action has been filed because Plaintiffs accurately contend that the adverse position adopted by Angelo Iafrate, Inc. and the ESOP entity with respect to the exercise and collection of Plaintiffs' individual Warrants, is a consequence of:

      a. Improper advice and counsel furnished to Iafrate family members in the period 2013 through 2017 by WNJ attorneys & employees;

      b. Improper advice and counsel given, in a conflicting and unethical manner, and in violation of fiduciary duty, to Angelo Iafrate, Inc. and the ESOP entity in 2017 and 2018 by Warner Norcross & Judd attorneys & employees;

      c. Breach of fiduciary duty by the Defendants in 2013;

      d. Breach of fiduciary duty in 2017.

## STATUTE OF LIMITATIONS

45. Warner Norcross & Judd completed the ESOP transaction and the closing occurred in December of 2013.

46. Thereafter, Warner Norcross & Judd continued to furnish advice and counsel to the ESOP entity and, as described earlier in this Complaint, has furnished advice on tax issues to

9

individual family members, from time to time, on matters that were exclusive to the interests

of the individual family members (former shareholders) of the AICC.

47.     On information and belief, Warner Norcross & Judd furnished advice to the ESOP

entity, which has adopted the multiple contract interpretations adverse to the individual

Plaintiffs. Specifically the ESOP entity argues that the individual Plaintiffs in this action (Angelo

Iafrate, Sr., Dominic Iafrate, Angelo Iafrate, Sr. as Trustee of the John Iafrate Irrevocable Trust

u/a/d 1/1/1988) have waived the right to secure payment on the Warrants because, after each

of their individual Senior Notes and Promissory Notes were already paid in full, they did not

exercise the Warrants, in cash or in shares, within the 60 day expiration date.  This

interpretation is in conflict with the expectations of the parties, and the fundamental structure

of the transaction as designed by Warner Norcross & Judd that existed as of the Closing.  This is

an opportunistic effort, accomplished by prepayment of some Promissory Notes, and not

others, in a fashion that was inconsistent with the Intercreditor Agreement, undertaken as a

course of action by the Newco and ESOP, upon advice furnished to it by Warner Norcross &

Judd.

48.     This position is being advanced by Warner Norcross & Judd in defense of the

ESOP entity and against the individual Plaintiffs named herein, in the companion litigation

previously cited (Case No. 2:18-cv-11150-AJT-RSW).

49.     This position is also contrary to the plain language of the Intercreditor

Agreement that Warner Norcross & Judd employees drafted for the benefit of the individual

Plaintiffs, prior to the ESOP Closing in December 2013.

10

50.     The individual Plaintiffs herein, did not and could not have learned about the adverse interpretation of the Intercreditor Agreement and the exercise of the Warrants, and were not advised regarding this improper construction of the plain language of the Intercreditor Agreement and the plain language of the Warrants until January 9, 2018 when Mr. Robert Adcock travelled to Florida, in person, to furnish this interpretation and to advise Plaintiffs, individually, that their Warrants would not be honored, because they had ostensibly expired.

51.     As described in the later Counts of this Complaint, Plaintiffs could not have known, and could not have discovered, the adverse interpretation of their Warrants and Intercreditor Agreements because they were not so informed by Warner Norcross & Judd at any point in time, and only learned of this strained and incorrect interpretation of the plain language of the Warrants and the plain language of the Intercreditor Agreement when it was announced to them by Mr. Adcock on January 9, 2018.  Since that point in time they have taken affirmative steps to enforce their rights and to otherwise seek redress from the ESOP entity.

52.     This action is filed to present claims for professional liability and professional negligence, breach of fiduciary duty, and fraudulent concealment.  This action is timely, pursuant to numerous applicable statute of limitations and accrual concepts, including the Michigan discovery exception, found at MCLA 600.5838(2).  This action is also timely as described in Count III, for reasons having to do with misrepresentation and active concealment (MCLA 600.5855).

## COUNT I: PROFESSIONAL LIABILITY AND PROFESSIONAL NEGLIGENCE

53.     Plaintiffs hereby incorporate paragraphs 1-52, as though fully set forth herein, word for word and paragraph for paragraph.

54.     Plaintiffs contend that the Defendant Warner Norcross & Judd established an attorney-client relationship with them individually, as shareholders of the corporation when it was AICC.

55.     The attorney-client relationship was formed when Warner Norcross & Judd was first contacted for the purpose of advising the individual shareholders regarding the potential sale of the AICC business entity, and when one of the potential options available to the shareholders was the formation of an ESOP relationship with a prospective purchaser comprised of AICC's employees.

56.     In this regard, the law firm issued opinion letters to individual shareholders, provided tax advice, drafted the Intercreditor Agreement which benefitted only individual family members in the course of the ESOP transaction, and provided advice on tax structure positions favorable to Plaintiffs with respect to tax matters.  Through these various activities, Warner Norcross & Judd established an attorney-client relationship with the individual Plaintiffs.

57.     Further evidence of the attorney-client relationship is the fact that the early invoicing for the transaction was directed to Michael Stefani, who was known to be the personal attorney for the family members, and those invoices were honored at the direction of the individual family members.

12

58.     Defendants never advised the shareholders or the individual family members that they should engage the services of independent, separate ESOP counsel for all aspects of the transaction.

59.     Warner Norcross & Judd never secured any waivers of the conflict of interest that might exist in these relationships.

60.     The applicable case law in Michigan establishes that, even in the absence of an express or written agreement, the conduct of the parties may create an attorney-client relationship.

61.     It is well-established that the relationship of client and lawyer arises when:

> (1) A person manifests to a lawyer the intent that the lawyer provide legal services for the person, and

> (2) The lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services.

62.     Plaintiffs affirmatively contend that they established an attorney-client relationship with Warner Norcross & Judd and, principally, with Warner Norcross & Judd employee Attorney Justin Stemple and other Warner Norcross & Judd employees by payment of invoices for services provided to them individually, and acceptance of specific advice directed to them individually, including the drafting of their Intercreditor Agreement.

63.     At all times pertinent hereto, the Defendants were engaged in the practice of their profession, and held themselves out to the public, and in particular to Plaintiffs, as skilled and competent attorneys, capable of properly advising and representing Plaintiffs.

64.     The Defendants owed Plaintiffs the duty to possess that reasonable degree of learning and skill that is ordinarily possessed by attorneys in similar situations, licensed in the

State of Michigan, and to use reasonable care and diligence in the exercise of the skill and
application of their learning to representing and providing advice and counsel to individuals
seeking their services in accordance with the standard prevailing amongst attorneys in the State
of Michigan, and in accord with the Michigan Rules of Professional Conduct. Further that the
Defendant Attorneys held themselves out as specialists in the legal practice area of ESOP
formation and were obligated to comply with applicable standards associated with that
specialty practice.

65. That the Defendants, in disregard of their duties and obligations to Plaintiffs, and at
variance with the prevailing standards, were negligent and committed malpractice in the
following particulars, among others:

(a) Warner Norcross & Judd attorneys failed to advise the individual Plaintiffs regarding
the specific terms of the Warrants and the Intercreditor Agreement, as well as the
inter-relationship between these two documents drafted by Warner Norcross &
Judd, in order to avoid the 2018 claim by Angelo Iafrate, Inc. and the ESOP that the
failure to designate an election within a 60 day period, was a potential hazard that
should be avoided, nor that Warner Norcross & Judd attorneys and employees
would assist Angelo Iafrate, Inc. and the ESOP in this adverse interpretation which is,
at best, a strained reading of the Warrant language. Warner Norcross & Judd owed
an obligation to the Plaintiffs to report the potential interpretation of otherwise
clear language and, if it was ambiguous, to either correct the ambiguity at the time
of drafting or, alternatively, inform Plaintiffs of this potential hazard of an adverse
interpretation of the language of the Warrants, in the event that the ESOP and AIC

sought to violate the terms of the Intercreditor Agreement, making payments on the senior and junior notes seriatim rather than pro rata.

(b) Warner Norcross & Judd owed an obligation to the Plaintiffs to report the potential interpretation of otherwise clear language, if it was determined to have been ambiguous, resulting in adverse consequences to the Plaintiffs which could have been avoided by alerting them at the time of the Closing in 2013 to the "60 day election" requirement.

(c) Providing email communications in which Stemple informed Plaintiffs that he had "... revised that section to allow the holder to request stock or cash. A request for cash will be paid in cash. A request for stock, *or no request,* can be paid in stock or cash at the company's election."

(d) There was a failure to disclose the effect of variation from the unanticipated pro rata payments as described in the Intercreditor Agreement as it impacted the timing of the Warrants;

(e) Warner Norcross & Judd drafted the documents poorly, creating a conflict within and between the individual shareholders and the ESOP entity;

(f) Defendant Warner Norcross & Judd owed continuing duties and obligations to the Plaintiffs in 2017 and 2018 that they have actively breached, in the methods and manner described in this Complaint.

66. The acts and/or omissions constituting negligence and/or malpractice of the Defendants, as alleged herein, directly and proximately caused and/or contributed to Plaintiffs'

injuries and damages which include, by way of illustration but not by way of limitation, the following:

    a. Expenses associated with litigation to enforce Plaintiffs' rights under the Intercreditor Agreement, and common stock Warrants, issued by Angelo Iafrate, Inc., and enforcing the terms of the relationship which permitted the establishment of the ESOP;

    b. Loss of the value of the Warrants which Warner Norcross & Judd affirmed would be due, owing and collectible by the Plaintiffs at the conclusion of the pro rata share payout of the Promissory Notes and Junior Notes held by all family members;

    c. Damages in excess of $8,357,115.00, as confirmed by an independent audit to be conducted during this litigation, as a result of the Defendants' complicity in violating the contracts, securities, Warrants, and Promissory Notes.

WHEREFORE, Plaintiffs pray for entry of a Judgment, on jury verdict, decided in their favor.

## COUNT II: BREACH OF FIDUCIARY DUTY

67.    Plaintiffs hereby incorporate paragraphs 1-66, as though fully set forth herein, word for word and paragraph for paragraph.

68.    Warner Norcross & Judd owed fiduciary duties to the individual Plaintiffs.

69.    An attorney engaged by a corporation owes certain fiduciary duties to the shareholders, where the shareholder places faith, confidence and trust in the attorney's judgment and advice.

70.    Defendant Warner Norcross & Judd established the fiduciary relationship with the individual Plaintiffs by its actions and by furnishing advice and counsel to the individual Plaintiffs, and in particular on matters impacting their sale of their shares to Newco.

71.    Warner Norcross & Judd violated its fiduciary duties to the individual Plaintiffs in the manner described below:

  a.   When Warner Norcross & Judd interpreted the inter-relationship between the Warrants and the Intercreditor Agreement in favor of the ESOP entity, it did so in a manner that was adverse to the individual shareholders, resolving ambiguous, or conflicting, interpretations in favor of one party over the other, contrary to fiduciary obligations to all of the various parties in these relationships;

  b.   There was an abject failure to notify the Plaintiffs that the ESOP entity was organizing, scheming, and planning to interpret the "exercise" of the Warrants in a manner contrary to the former shareholder, creditors' financial interest in the Warrants;

  c.   Warner Norcross & Judd actively participated in the determination by Angelo Iafrate, Inc. executives and the ESOP executives in late 2017 and into 2018, to structure payment of the Senior Promissory Notes and

17

Junior Notes to certain of the Plaintiffs in an effort to defeat the
entitlement to collect cash or stock through the Warrants.

d.   Warner Norcross & Judd actively participated in the assistance of Angelo
Iafrate, Inc. and the ESOP to convert what had been the clear intention of
the parties in 2013 to a method by which the Angelo Iafrate, Inc. entity
and the ESOP entity actively pursued a misconstruction of the documents
and the intention of the parties in an effort to defeat Plaintiffs' final
payout for its shares of stock as originally drafted;

e.   Warner Norcross & Judd actively avoided any description to the Plaintiffs,
any warning, any advice, or any protective language which would permit
the Angelo Iafrate, Inc. entity and the ESOP entity executives to "de-link"
the Warrants from the Promissory Note obligations and to "de-link" the
Warrant obligations from the Intercreditor Agreement as executives of
the ESOP sought to defeat Plaintiffs' rights;

f.   Warner Norcross & Judd failed to properly advise the family member
shareholders of the significance in the change of payment method, when
it learned that the payment was being accomplished on individual
satisfaction of individual Promissory Notes, rather than pro rata.

72.   The breaches of fiduciary described in this Complaint, as well as others to be
determined during the course of discovery, proximately caused damages that will be sustained
by Plaintiff in the event that their Warrants are not paid in full.

18

73.     The acts and/or omissions constituting negligence and/or malpractice of the Defendants, as alleged herein, directly and proximately caused and/or contributed to Plaintiffs' injuries and damages which include, by way of illustration but not by way of limitation, the following:

        a.  Expenses associated with litigation to enforce Plaintiffs' rights under the Intercreditor Agreement, and common stock Warrants, issued by Angelo Iafrate, Inc., and enforcing the terms of the relationship which permitted the establishment of the ESOP;

        b.  Loss of the value of the Warrants which Warner Norcross & Judd affirmed would be due, owing and collectible by the Plaintiffs at the conclusion of the pro rata share payout of the Promissory Notes and Junior Notes held by all family members;

        c.  Damages in excess of $8,357,115.00, as confirmed by an independent audit to be conducted during this litigation, as a result of the Defendants' complicity in violating the contracts, securities, Warrants, and Promissory Notes.

WHEREFORE, Plaintiffs pray for entry of a Judgment, on jury verdict, decided in their favor.

## COUNT III:  FRAUDULENT MISREPRESENTATION

74.     Plaintiffs hereby incorporate paragraphs 1-73, as though fully set forth herein, word for word and paragraph for paragraph.

75.     During the negotiations that have been described in this Complaint, between then-current employees of AICC, Warner Norcross & Judd played a principal role in advising Plaintiffs including:

      a.  Formation of an ESOP as an alternative to an outright sale to a third party buyer;

      b.  Tax consequences and benefits associated with formation of an ESOP transaction;

      c.  Consultation with valuation expert witnesses to determine appropriate sales pricing for the AICC business entity;

      d.  Compliance with Federal regulations regarding the establishment of an ESOP;

      e.  Furnishing explanations and details that would permit Plaintiffs to fully understand their rights, their expectations, the intention of the parties as documented by Warner Norcross & Judd in the supporting documents which formed the Closing of the transaction;

      f.  Advising Plaintiffs regarding the language and content of the Promissory Notes;

      g.  Advising Plaintiffs regarding the relationship between the Promissory Notes and the Warrants;

      h.  Advising the Plaintiffs regarding the relationship of the Promissory Notes to the Warrants and, most importantly to Plaintiffs, to the Intercreditor Agreement.

      i.   In all of these communications, Defendants had an obligation to be forthcoming, to be honest, to be diligent, to be forthright and to protect for benefit of Plaintiffs their goals and objectives, including realization of the full valuation of the equitable interests that were being sold to the ESOP would be fully realized.

76.     In all of these communications, Defendants had an obligation to be forthcoming, to be honest, to be diligent and to provide full and complete explanations, without concealing information and/or risks necessary for Plaintiffs to make fully informed decisions.

77.     Defendants failed to comply with these obligations, which were owed to the Plaintiffs in pursuit of the fiduciary relationship established between the parties and, moreover, Defendants actively engaged in misrepresentations in 2013, and again in 2017-2018 when the Defendants encouraged Angelo Iafrate, Inc. and the ESOP entity executives to take positions designed to defeat the full value of Plaintiffs' monetary remuneration for their sale of stock to Newco, dating back to December of 2013.

78.     Defendants made misrepresentations of fact, as described in this Complaint in 2013, in 2014 and throughout the entire course of dealing.

79.     Defendants made specific misrepresentations by omission, advice furnished to the Angelo Iafrate, Inc. Board of Directors that was contrary to prior statements and representations, and otherwise actively worked to defeat Plaintiffs' interests in recovery of their remuneration as originally intended.

80.     The Defendants intentionally made false representations of material facts to the Plaintiffs regarding each of these categories as described above.

81.     Defendants' representations were false when they were made.

82.     Defendants knew that the representations were false when they were made or, alternatively, made them recklessly.

83.     Defendants intended and knew that Plaintiffs would rely on the representations.

84.     Plaintiffs have sustained economic losses directly resulting from the misrepresentations.

85.     The acts and/or omissions constituting negligent or intentional misrepresentation of the Defendants, as alleged herein, directly and proximately caused and/or contributed to Plaintiffs' injuries and damages which include, by way of illustration but not by way of limitation, the following:

> a. Expenses associated with litigation to enforce Plaintiffs' rights under the Intercreditor Agreement, and common stock Warrants, issued by Angelo Iafrate, Inc., and enforcing the terms of the relationship which permitted the establishment of the ESOP;
>
> b. Loss of the value of the Warrants which Warner Norcross & Judd affirmed would be due, owing and collectible by the Plaintiffs at the conclusion of the pro rata share payout of the Promissory Notes and Junior Notes held by all family members;
>
> c. Damages in excess of $8,357,115.00, as confirmed by an independent audit to be conducted during this litigation, as a result of the Defendants' complicity in violating the contracts, securities, Warrants, and Promissory Notes.

22

WHEREFORE, Plaintiffs pray for entry of a Judgment, on jury verdict, decided in their favor.

## COUNT IV: FRAUDULENT CONCEALMENT

86.     Plaintiffs hereby incorporate paragraphs 1-85, as though fully set forth herein, word for word and paragraph for paragraph.

87.     As previously described in this Complaint, Defendants actively sought the relationships described in this Complaint with the Plaintiffs and were compensated by Plaintiffs for those relationships, as they provided invoices for services to the Plaintiffs. Pursuant to their relationship with Plaintiffs, Defendants owed Plaintiffs a fiduciary duty.

88.     Defendants actively and fraudulent concealed from the Plaintiffs their newly-realized intent in 2017-2018 to assist Angelo Iafrate, Inc. and the ESOP entity executives from providing full payment of the obligations of Angelo Iafrate, Inc. and the ESOP entity as required by the Senior Promissory Notes, the Junior Promissory Notes, and the Warrants.

89.     Plaintiffs could not have discovered this deception until it was exercised in 2018 and they were notified at their residence in Florida on January 9, 2018.

90.     Defendants actively concealed their role in preparing for this adverse contractual interpretation of the documents drafted by Warner Norcross & Judd, which the Defendants have fostered, encouraged, and supported by participating as litigation counsel for the Angelo Iafrate, Inc. entity and the ESOP entity.

91.     Defendants fraudulently concealed the status of their representation to the business entity and the ESOP entity, did not disclose material conversations and exchanges of

advice and counsel from Warner Norcross & Judd to opposition participants when, in fact, there was an obligation to do so timely and diligently.

92.     Defendants fraudulently concealed the direct conflict of interest they engaged in by representing the Angelo Iafrate, Inc. entity and the ESOP entity to the detriment of Plaintiffs.

93.     The acts and/or omissions constituting fraudulent concealment of the Defendants, as alleged herein, directly and proximately caused and/or contributed to Plaintiffs' injuries and damages which include, by way of illustration but not by way of limitation, the following:

   a. Expenses associated with litigation to enforce Plaintiffs' rights under the Intercreditor Agreement, and common stock Warrants, issued by Angelo Iafrate, Inc., and enforcing the terms of the relationship which permitted the establishment of the ESOP;

   b. Loss of the value of the Warrants which Warner Norcross & Judd affirmed would be due, owing and collectible by the Plaintiffs at the conclusion of the pro rata share payout of the Promissory Notes and Junior Notes held by all family members;

   c. Damages in excess of $8,357,115.00, as confirmed by an independent audit to be conducted during this litigation, as a result of the Defendants' complicity in violating the contracts, securities, Warrants, and Promissory Notes.

WHEREFORE, Plaintiffs pray for entry of a Judgment, on jury verdict, decided in their favor.

Dated:  July 9, 2018                      /s/ Lawrence J. Acker
                                         Lawrence J. Acker (P28123)
                                         Attorney for Plaintiffs
                                         LAWRENCE J. ACKER, P.C.
                                         44 East Long Lake Road
                                         Bloomfield Hills, MI 48304
                                         (248) 594-7277
                                         L.Acker@AckerPC.com

Dated: July 9, 2018                       /s/ Steven M. Hickey
                                         Steven M. Hickey (P33142)
                                         Attorney for Plaintiffs
                                         HICKEY CIANCIOLO FINN & ATKINS, P.C.
                                         901 Wilshire Drive; Suite 550
                                         Troy, MI 48084
                                         248-247-3318

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELO IAFRATE, SR.; DOMINIC IAFRATE;     *
ANGELO IAFRATE, SR. AS TRUSTEE OF THE     *
JOHN IAFRATE IRREVOCABLE TRUST u/a/d      *
1/1/1988                                   *
          Plaintiffs     *
                                 *
vs.                                        *     CIVIL ACTION NO. 2:18-cv-12028-BAF-APP
                                 *
WARNER, NORCROSS & JUDD, LLP,              *
                                 *
          Defendants     *

| | |
|---|---|
| Lawrence J. Acker (P28123)<br>Attorney for Plaintiffs<br>LAWRENCE J. ACKER, P.C.<br>44 East Long Lake Road<br>Bloomfield Hills, MI 48304<br>248-594-7277 | |
| Steven M. Hickey (P33142)<br>Attorney for Plaintiffs<br>HICKEY CIANCIOLO FINN & ATKINS, P.C.<br>901 Wilshire Drive, Suite 550<br>Troy, MI 48084<br>248-247-3318 | |

**JURY DEMAND**

NOW COME Plaintiffs herein, by and through their counsel of record, LAWRENCE J. ACKER, P.C., and hereby relies on their previously statedr Demand for Trial by Jury in the above-entitled cause of action.

Dated:  July 9, 2018

                                 /s/ Lawrence J. Acker
                                 Lawrence J. Acker (P28123)
                                 Attorneys for Plaintiffs
                                 LAWRENCE J. ACKER, P.C.

Dated:  July 9, 2018

                                 /s/ Steven M. Hickey
                                 Steven M. Hickey (P33142)
                                 Attorney for Plaintiffs
                                 HICKEY CIANCIOLO FINN & ATKINS, P.C.