UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMINIC IAFRATE; ANGELO          Case No.: 18-12028
IAFRATE, SR.; ANGELO
IAFRATE, SR. as trustee of the          Arthur J. Tarnow
JOHN IAFRATE IRREVOCABLE          United States District Judge
TRUST,
                           Plaintiffs,          R. Steven Whalen
v.                                    United States Magistrate Judge

WARNER NORCROSS & JUDD,
LLP,
                    Defendant.
_____/

## **OPINION AND ORDER**

Before the Court is plaintiffs' March 10, 2020 Motion to Compel Production

of Documents Withheld as Privileged.  (ECF No. 37).  For the reasons set froth

below, plaintiffs' motion to compel is **GRANTED IN PART, DENIED IN**

**PART**.

## I.    BACKGROUND FACTS[1]

A.    The Parties and Relationships

Angelo Iafrate, Sr., a plaintiff in this case, started construction company

Angelo Iafrate Construction Company (AICC).  Angelo Iafrate Sr., and his sons

---

[1] These facts derive from the Amended Complaint (ECF No. 3) and the facts
stated in the motion to compel and response.

plaintiff Dominic Iafrate, the John Iafrate irrevocable trust,[2] and Angelo Iafrate, Jr. (not a plaintiff) collectively became the sole shareholders of AICC over time. Prior to 2013, Angelo Sr. and Dominic moved to Florida and started a similar construction company down there.

In early 2013, the family decided to create an Employee Stock Ownership Plan (ESOP) structure for the company that would allow the family members to phase out of the business and "monetize their equity interest in AICC" by selling their shares to the ESOP entity, instead of selling to a third party. (ECF No. 37, PageID.441). The following steps were taken in the formation of the ESOP: plaintiffs contributed all their stock in AICC to "Newco." Newco formed the ESOP, which then purchased all the plaintiffs' shares in Newco for an established purchase price. One hundred percent of the purchase price was provided by seller financing in the form of a loan from the Iafrate family shareholders to the ESOP. As part of the closing, that loan was assigned from the ESOP to, and assumed by, Angelo Iafrate, Inc., (AII), formerly Newco. AII then immediately refinanced the ESOP loan with plaintiffs and furnished to each plaintiff a Senior Promissory Note and a Junior Note for the purchase of plaintiffs' shares over 10 years, and issued Common Stock Warrants. (ECF No. 3, PageID.35-36, ¶¶ 18-20 – Amended

---

[2] John Iafrate is not a plaintiff in this case. Angelo Sr. is listed as a plaintiff as trustee of the John Iafrate Irrevocable Trust.

2

Complaint).  The Common Stock Warrants entitled each plaintiff to purchase

shares at $225 per share or to redeem shares for cash payment, with limitations

listed in the contract, after full payment of the Notes.  The transaction closed

December 6, 2013.

After the transaction was complete, Dominic Iafrate remained on the Board

of Directors of AICC and the ESOP entity, AII, until February 20, 2017.  Angelo

Iafrate, Jr. remained on the Board until January 26, 2016.  (ECF No. 37,

PageID.438).  Robert Adcock became President of AII and Trustee of the ESOP.

(ECF No. 46, PageID.1001-02).

B.      Warner Norcross & Judd and the Common Stock Warrants

In February 2013, Warner Norcross & Judd (WNJ) entered into a

representation agreement with AICC for the purpose of implementing an

Employee Stock Ownership Plan.  (ECF No. 46-5).  WNJ attorney Justin Stemple

became responsible for drafting the majority of the ESOP documents.  At that time,

plaintiffs and Angelo Jr. were the sole shareholders in AICC.  It is plaintiffs'

contention that WNJ also represented their individual interests in addition to

representing AICC, but WNJ disagrees.  (ECF No. 3; ECF No. 37, PageID.441-

46).

Stemple drafted, among other things, the Common Stock Warrants.  The

initial draft provided for a Warrant term that terminated warrants of all the holders

on December 31, 2024, or effectively in ten years of closing.  (ECF No. 37-3, PageID.658).  Two weeks prior to the closing date, Stemple sent plaintiffs and their family attorney a second iteration containing many changes.  One such change was in the Warrant Term clause.  In this version, the warrants for each holder terminate, and could no longer be exercised, 60 days after the ESOP paid in full the Senior and Junior Promissory Notes to the holder.  (ECF No. 37-3, PageID.666).  This is the version the plaintiffs signed into effect on December 6, 2013.

This case is largely about the Common Stock Warrants term clause.  Plaintiffs' believe that WNJ attorneys were duty-bound to expressly point out and inform them of the 60-day time limit on exercising the warrant, especially once AII started paying the Notes in full.

Though the plaintiffs originally planned to have the payments on the Senior and Junior Promissory Notes paid pro rata to each family member, they decided that Angelo Sr.'s Notes should be paid first.  Angelo Sr. was paid in full on December 20, 2016.  He did not exercise his Warrants within 60 days of full payment.  On February 17, 2017, Dominic and the John Iafrate Trust's Notes were paid in full, but they did not exercise their redemption rights under the Warrants within 60 days either.  On February 2, 2018, Angelo Jr.'s notes were paid.  All four attempted to exercise their rights under the Warrant for payment of cash instead of

shares of stock.  AII only paid Angelo Jr., as his request came within 60 days of full payment on his Notes.  This is when, purportedly, plaintiffs learned of the 60-day warrant termination clause.  At Angelo Jr.'s request, Stemple drafted an assignment of the warrant payments of 25% to each of the three other shareholders/plaintiffs.  (ECF No. 37, PageID.460).

Plaintiffs' theory is that attorney Stemple and Adcock colluded to essentially trick plaintiffs out of their money.  They believe that Adcock and Stemple communicated about the 60-day term limit and planned to "lie in wait" for the 60 days to pass after payment of each promissory note in full, then deny the redemption rights based upon the 60-day language in the contract.  (ECF No. 37, PageID.452).

## II.    DISCUSSION

Plaintiffs served on WNJ their First Request for Production of Documents (RFP) containing 28 RFPs on February 22, 2019.  (ECF No. 37-2).  WNJ responded to some of the requests indicating that no documents existed to satisfy the request, that documents had already been produced, or that documents would be produced, subject to general objections listed in the response.  (ECF No. 37-3). However, WNJ objected to producing any documents as to some of the requests claiming they are protected by attorney-client privilege.  In general, WNJ relied on this objection for requests for documents post-dating the ESOP transaction which

seek communications between WNJ attorneys and persons/entities other than the plaintiffs.  WNJ provided a 56-page privilege log.  (ECF No. 37-2, Ex. 3).  Plaintiffs believe they are entitled to documents withheld under attorney-client privilege.  They raise a number of arguments, addressed in turn below.

A.      Adverse Litigation/Joint Client Exception

The main premise behind plaintiffs' first argument is that they, as individuals, were clients of WNJ, as well as AICC pre-transaction.  WNJ insists that the plaintiffs were not their clients, and that only AICC and then the entities created by the transaction—AII and AII ESOP—were the clients.

 "In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (citing Fed. R. Evid. 501).  The attorney-client "privilege attaches only to confidential communications by the client to his attorney, which are made for the purpose of obtaining legal advice." *In re Costs & Attorney Fees*, 250 Mich. App. 89, 99 (2002) (quoting *McCartney v. Attorney General,* 231 Mich. App. 722, 731 (1998)).  Although WNJ raised work-product privilege against some requests, and plaintiffs include the term in recitations of legal authority (*see* ECF No. 37, PageID.461, n. 7), plaintiffs did not

set forth any argument that documents withheld as work product should be compelled.[3]

The Court need not decide whether plaintiffs and WNJ had an attorney-client relationship to resolve plaintiffs' motion to compel.  Assuming without deciding that such a relationship existed, plaintiffs' joint client theory of entitlement to communications between WNJ and Adcock, AII, and AII ESOP lacks merit.

As an initial matter, plaintiffs cite the "common interest exception" to attorney-client privilege.  Taking plaintiffs' use of terminology literally, the common interest doctrine does not apply here.  It applies "where the parties are represented by separate attorneys but share a common legal interest."  *Ford Motor Co. v. Michigan Consol. Gas Co.*, 2013 WL 5435184, at *5 (E.D. Mich. Sept. 27, 2013) (quoting *State Farm Mut. Auto. Ins. Co. v. Hawkins,* 2010 WL 2287454 at *8 (E.D. Mich. June 4, 2010)).  Under the doctrine, an attorney-client privileged communication can be exchanged with the third party without waiving the privilege, provided that the parties have "'an identical legal interest with respect to the subject matter of the communication.'"  *MPT, Inc. v. Marathon Labels, Inc.,*

---

[3] "[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

2006 WL 314435 at *6 (N.D. Ohio Feb. 9, 2006) (quoting *Libbey Glass, Inc. v. Oneida, Ltd.,* 197 F.R.D. 342, 347 (N.D. Ohio 1999)); *see also Estate of Nash v. City of Grand Haven*, 321 Mich. App. 587 (2017).  Plaintiffs argue here that they were represented by the same attorney as joint clients, not a different attorney than the one representing the business entities and Adcock after the transaction.

Plaintiffs' argument, more broadly, is that as joint clients with AII, ESOP, and Adcock toward a common interest, they are entitled to communications between WNJ and the other parties.  (ECF No. 37, PageID.470).  The principle behind plaintiffs' argument is that "when two persons employ a lawyer as their common agent, their communications to him as to strangers will be privileged, but as to themselves, they stand on the same footing as to the lawyer and either can compel him to testify against the other as to their negotiations in any litigation between them, when the subject of the conversation is competent."  *Grand Trunk W. R. Co. v. H.W. Nelson Co.*, 116 F.2d 823, 835 (6th Cir. 1941) (citations omitted).  The attorney-client privilege protects joint client communications from discovery by third parties. "Among joint clients, however, the privilege may not be used either to restrict access to, or to preclude use of communications between the attorney and the clients that relate to those matters in which they had a common interest and about which they collectively consulted the attorney."  *Brownsville*

*Gen. Hosp., Inc. v. Brownsville Prop. Corp. (In re Brownsville Gen. Hosp., Inc.)*, 380 B.R. 385, 390 (Bankr. W.D.Pa. 2008).

Even if plaintiffs, as individuals, were WNJ clients for advice regarding the Common Stock Warrants and other matters post-transaction, they have not made the case that they can be considered to have been joint clients with the entities and Adcock. Simply put, once the transaction was complete and the entities were created, the two parties were not seeking advice on a matter about which they had a common interest. Plainly, plaintiffs' interest was to "monetize their equity interest in AICC" and to get cash upon redemption of their warrants. Plaintiffs' case is based on the proposition that the entities' interest (along with WNJ) was in finding a way to keep plaintiffs from redeeming the warrants for cash. This was clearly not an interest common to both parties. These positions, legally and factually, are in opposition. Any legal advice given to the entities and to plaintiffs toward these goals would, by necessity, be antithetical, and not with common interest in mind. And, plaintiffs were creditors while the entities were debtors; again, opposite interests at stake.

In short, even if plaintiffs had been personally represented by WNJ attorneys from 2013 through 2018, they were not jointly represented with the entities toward a common interest. For this reason, plaintiffs are not entitled to attorney-client privileged communications between the entities and WNJ once the transaction was

complete and those entities were formed.  An exception to this is discussed below, regarding plaintiffs' fiduciary exception argument.

Finally, plaintiffs cite authority for the proposition that subsidiary and parent corporations are joint clients, each of whom has an interest in the privileged communications of the other.  (ECF No. 37, PageID.471-72).  Similarly, they say, they have an interest in privileged communications between AII and AII ESOP and WNJ.  It is true that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 349 (1985).  Moreover, "[n]ew managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors." *Id.* In *Polycast Technology Corp. v. Uniroyal, Inc*., 125 F.R.D. 47, 49 (S.D.N.Y.1989), the court dealt with the issue of "control over a corporate subsidiary's attorney-client privilege after the subsidiary is sold, with respect to confidential communications occurring prior to the sale." *Id.* In *Polycast*, the purchasing corporation sought the disclosure of prior communications between the purchased subsidiary and an attorney that had represented both the subsidiary and the selling parent. *Id*. at 48. Relying upon *Weintraub*, the court held that a joint privilege existed between the selling parent and the subsidiary and that the buying

10

corporation effectively acquired the subsidiary's share of the privilege as a result of the sale. *Id.* 125 F.R.D. at 49.

First, the parties do not appear to dispute the requests for documents created before the transaction was complete. Any communications between WNJ and plaintiffs as sole shareholders of AICC prior to the transaction are certainly discoverable (if plaintiffs do not already have those documents). Indeed, WNJ did not object to producing any documents from before the transaction on December 6, 2013. (ECF No. 37-2, PageID.532-42, RFPs 1, 7-8, 11-21). WNJ objected to producing documents/communications created after the transaction and that cover communications between WNJ and AII, the ESOP, and Adcock, arguing that those entities and Adcock (at least starting in 2018) have attorney-client privilege over those communications. (*Id.*, RFP Nos. 10-11, 22-25). Second, the authority cited above indicates that attorney-client privilege that existed prior to the corporate changes stays with the moving entity after the changes. Either of the two parties can waive the privilege as to communications that occurred pre-transaction. It does not stand for the proposition that the seller can compel disclosure of privileged communications between the old or new company and its attorney after the transaction. Plaintiffs have no authority to compel disclosure of privileged communications between the entities and WNJ by way of their former status as sellers of AICC.

11

B.     Fiduciary Duty Exception

Plaintiffs make two arguments on the so-called fiduciary duty exception.

The first argument consists of two sentences asserting that where a client sues its

attorney for breach of duty arising from the attorney-client relationship in a joint-

client situation, communications between the attorney and the joint client relevant

to the breach are not protected by attorney-client privilege as between the joint

clients.  (ECF No. 37, PageID.474) (citing *Newsome v. Lawson*, 286 F. Supp. 3d

657, 665 (D. Del. 2017).  As discussed above, plaintiffs have not made the case

that there was a joint client relationship with WNJ.

Plaintiffs next argue that since Dominic and Angelo Jr. were board members

of AICC until February 2017 and January 2016, respectively, they are entitled to

all communications between WNJ and other board members of AICC during their

tenure.[4]  (ECF No. 37, PageID.474-76).  As plaintiffs point out, WNJ did not

address this argument in its response brief.  (*See* ECF No. 46).[5]

---

[4] Since Angelo Jr. is not a plaintiff, he was not a party to the First Request
for Production of Documents plaintiffs served on defendants.  This motion to
compel was not, and could not have been, brought on Angelo Jr.'s behalf.  His
ability to compel disclosure of otherwise privileged communications is not in issue
here.

[5] However, the interested parties—AII, AII ESOP, and AICC—did respond
to this argument in their response brief.  (ECF No. 45).  They argue that a
balancing test must be applied to determine whether the former board member is
entitled to communications between the board and the company's counsel,
discussed more fully below.  Plaintiffs argue in reply that their response brief
should not be considered because they are not parties to this litigation and have no

Plaintiffs' argument is supported by the Michigan law.  Under existing Michigan case law, a former member of a corporation's board of directors is entitled to discover communications between the corporation's counsel and another member of the board made during the former member's tenure.  *See Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107 Mich. App. 509, 519 (1981).  *Fassihi* involved two fifty per cent shareholders in a closely held corporation. The defendant law firm represented the corporation (but not plaintiff Fassihi in his individual capacity) and "was responsible for drafting all the agreements pertaining to membership in the professional corporation." *Id.* at 513. When the other shareholder, Rudolfo Lopez, "decided that he no longer desired to be associated with [Fassihi]," Lopez requested the defendant law firm to "ascertain how [Fassihi] could be ousted from [the corporation]." *Id.* at 512. The defendant arranged for Fassihi's termination at a meeting of the board of directors allegedly attended by Lopez and the business manager of the corporation. *Id.* at 513 & n. 2. The court found no attorney-client relationship between the attorney and Fassihi; the corporation was the attorney's client.  The issue before the court was whether the attorney owed a fiduciary duty to Fassihi as a shareholder.  Based on the pleadings, Fassihi's claim was entitled to go forward.

---

standing.  (ECF No. 47).  Even acknowledging the interested parties' argument, as discussed below, plaintiffs have the better argument.

Relevant here, the court also addressed Fassihi's motion to compel the attorney law firm to produce communications between lawyer and Lopez regarding Fassihi's position as a shareholder.  The defendant contended that those communications were privileged because they were made on behalf of the majority of the board of directors and the attorney-client privilege belongs to the control group.  The court held that, "[a]s a member of the board of directors, plaintiff was a member of the corporate control group."  *Id.* at 519 (citing *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977). "Thus, with respect to any communications defendant had with Dr. Lopez while representing the corporation, as opposed to Lopez personally, plaintiff, as a member of the control group, is equally entitled to this information."  *Id.*; *see also Ewie Co. v. Mahar Tool Supply, Inc.*, 2008 WL 4605909, at *8 (Mich. Ct. App. Oct. 9, 2008), *rev'd in part, appeal denied in part on other grounds*, 483 Mich. 905 (2009) ("To the extent Mahar seeks to depose either attorney about their legal work and advice to individuals, the information would be privileged and not discoverable. However, as a member of the LLC, Mahar is entitled to information from either attorney about their representation of the LLC.") (internal citation omitted).

Plaintiffs here, like Fassihi, are requesting documents from WNJ covering communications between WNJ and its entity clients and Adcock targeted at the common stock warrants and the 60-day warrant expiration.  Dominic was a board

member of AICC and AII until February 2017.  Under *Fassihi*, Dominic is entitled to communications between WNJ and Adcock as board member of AICC and AII during the time Dominic was also a board member.

The interested parties (AICC, AII, and AII ESOP) rely on a case from this district that took a different approach.  In *Blankenship v. Superior Controls, Inc.*, 2014 WL 12660373 (E.D. Mich. June 12, 2014), the plaintiff was a former CEO and board member of defendant Superior Controls, Inc. (SCI).  The plaintiff sought through discovery communications between SCI and its attorney during the time he was CEO and board member.  *Id.* at *1.  The court found there to be an apparent lack of clear Michigan authority on the issue.  Without clear authority, the court turned to federal law to best determine how the Michigan Supreme Court would analyze whether the plaintiff was entitled to the communications.  After reviewing case law from various jurisdictions, the court concluded that Michigan would take a "flexible" approach and apply a balancing test, rather than a strict rule, to decide if the former board member was entitled to privileged communications made during his or her tenure.  *Id.* at *4-7 (The "Michigan Supreme Court is much more likely to adopt a view that balances the interests of the parties and presumptively protects the privilege, absent a showing of good cause by the party seeking to pierce the privilege.").  The factors identified are: the necessity of the information to the seeking party and the availability of the information from other sources; the

15

extent to which the communication is identified versus the extent to which the party is merely fishing; and the risk of revealing information that the corporation has an interest in protecting for independent reasons. *Id.* at \*6 (citing *Garner v. Wolfinbarger*, 430 F.2d 1093, 1104 (5th Cir. 1970)).

Notably, the court in *Blankenship* did not cite the *Fassihi* decision, even though *Fassihi* is a Court of Appeals decision, not a Michigan Supreme Court decision.  It is unclear, then, whether *Fassihi* had any bearing on *Blankenship*.  In diversity cases such as this, Michigan law controls attorney-client privilege, and there is a published Michigan appellate case on this issue.  *See In re Powerhouse Licensing, LLC*, 441 F.3d at 472.

I find that in this case, *Fassihi* is controlling (and notably, WNJ did not contest plaintiffs' assertion that it is), and therefore Dominic Iafrate is entitled to otherwise privileged communications between WNJ and AICC/AII created while he was a board member of AICC and AII, and relevant to the RFPs.   But regardless, Dominic is likewise entitled to the communications applying the factors identified in *Blankenship*.  The documents plaintiffs believe exist are necessary to their claims of breach of fiduciary duty.  It is clear that plaintiffs/Dominic Iafrate cannot obtain these communications from another source.  Third, there is no indication that plaintiffs are merely on a fishing expedition.  They have one or more emails from WNJ to Adcock on the subject they are interested in—the

Common Stock Warrants and their payout.  It is not unreasonable for plaintiffs to believe more communications exists.  Finally, neither WNJ nor the interested party entities have put forth an interest in protecting the documents for reasons independent of attorney-client privilege.  Specifically, WNJ has not established a reason to believe there is a "material risk of prejudice or embarrassment to the organization beyond such evidentiary use as the agent may make of the communication." *Blankenship*, 2014 WL 12660373, at *7 (quoting Restatement (Third) of Law Governing Lawyers, § 72, Comment j)).

Dominic Iafrate is entitled to disclosure of communications made between WNJ and other board members of AICC and the AII ESOP while he was a board member himself.  Documents fitting that criteria must be produced.

C.    Waiver

Lastly, plaintiffs argue they can compel production of communications between the entities and Adcock and WNJ attorneys because AII and Adcock waived attorney-client privilege by attaching one communication to their brief in another, but related, case.  Plaintiffs and Angelo Iafrate, Jr., filed a separate suit against AII and Adcock for claims based on the same factual bases as this case. (Case No. 18-11150, the "securities case").  AII and Adcock attached an email from WNJ attorney Stemple to Adcock dated December 28, 2016 to their reply to the motion to dismiss.  (ECF No. 37, PageID.476).

17

Defendant argues that the communication was merely a summary of the terms of the common stock warrant, not legal advice to Adcock.  As such, there is no waiver.  WNJ also argues, alternatively, that if this email is considered a waiver of attorney-client privilege, the waiver should be limited to communications involving the same subject matter as the email.  (ECF No. 46, PageID.1015-21).

A federal court applies state law principles to questions involving privilege issues in diversity cases, such as the present one, and federal law principles govern waiver. *Irth Sols., LLC v. Windstream Commc'ns LLC*, 2017 WL 3276021, at *5 (S.D. Ohio Aug. 2, 2017) (citing *Blankenship v. Superior Controls, Inc.*, 2014 WL 12659921, at *2 (E.D. Mich. Nov. 25, 2014)).  Federal Rule of Evidence 502 provides guidance on when there is a waiver of either the attorney-client privilege or work-product protection through disclosure. "Under [Rule 502] in a federal proceeding—although state law still applies to the existence of a privilege in a diversity case—federal law (as stated in the Rule) controls waiver." *Lee v. Medical Protective Co.*, 858 F. Supp. 2d 803, 807 (E.D. Ky. 2012) (citing Fed. R. Evid. 502(f)).

The attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig*., 293 F.3d 289, 294 (6th Cir. 2002). By voluntarily disclosing his attorney's advice to a third party, for

example, a client is held to have waived the privilege because the disclosure runs counter to the notion of confidentiality. *In re Grand Jury Proceedings of Oct. 12, 1995,* 78 F.3d 251, 254 (6th Cir. 1996) (citing *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1424 (3d Cir. 1991)).  The burden of showing that the privilege has not been waived falls upon the person claiming the privilege. *United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir.1997); *see also In re VisionAmerica, Inc. Sec. Litig*., 2002 WL 31870559, at *2, n. 2 (W.D. Tenn. Dec. 18, 2002) (holding that the party claiming privilege must also show nonwaiver) (collecting cases and noting that the Sixth Circuit has favorably cited cases holding that the party claiming privilege must also show nonwaiver).

In the securities case, plaintiffs alleged, among other things, that Adcock breached his fiduciary duty as a trustee of the ESOP.  Adcock attached the email at issue to his reply brief to the motion to dismiss to show that he complied with his fiduciary duty by his "reliance" on legal, valuation, and accounting advisors "to structure and interpret the transaction."  (Case No. 18-11150, ECF No. 37, PageID.686, Exhibit J).  The transaction referenced is the redemption of the warrants and the 60-day term limit on the warrants.  The exhibit was not considered in the Court's decision on the motion to dismiss.  (Case No. 18-11150, ECF No. 45).

In this case, non-parties (interested parties) AII, AII ESOP, and AICC argue in their response brief that they did not argue an "advice of counsel" defense in the securities case, and thus did not open up privileged communications. (ECF No. 45, PageID.981-82).

> When a party asserts a defense of good faith or reasonableness, and affirmatively offers testimony that the party consulted with their attorney as factual support for the defense, and when counsel's advice in some way supports the defendant's good faith belief, the defendant has put his counsel's advice 'at issue' and thereby waives the attorney client privilege on the narrow subject matter of those communications.

*Henry v. Quicken Loans, Inc.,* 263 F.R.D. 458, 469 (E.D. Mich. 2008). Therefore, where a party "chose to inject the advice of its counsel into this litigation[,]" it "should not be a surprise to find that the privilege has been waived." *Id.* at 470.

The undersigned agrees with the non-parties on this issue. Adcock cited attorney advice to demonstrate he fulfilled his fiduciary duty as trustee by seeking the advice of professionals in handling the warrants. It does not appear that Adcock asserted that he was not liable because he relied on the advice of an attorney to take one course of action over another.

WNJ argues that the email does not constitute waiver of the privilege because it did not disclose advice. (ECF No. 46, PageID.1019).

The email begins with a summary of the "key terms" of Angelo Sr.'s warrant. The summarized terms are the 60-day expiration after full payment on the

20

notes, the value of the warrant and price per share, the company's right to pay cash and to pay quarterly, and that the value of the warrant on the date exercised is the most recent appraised value.  (ECF No. 37-3, PageID.696).  This list is truly a summary of terms anyone could glean from reading the Common Stock Warrants.  This does not reflect advice to Adcock.  *See In re Dayco Corp. Derivative Securities Litig.*, 99 F.R.D. 616, 619 (S.D. Ohio 1983) (No waiver found where released document included only a summary, findings, and conclusions, but not the facts which led to those conclusions or the underlying report); *Leibel v. General Motors Corp.,* 250 Mich. App. 229, 239 (2002) ("Opinions, conclusions, and recommendations based on facts are protected by the attorney-client privilege when the facts are confidentially disclosed to an attorney for the purpose of legal advice.").  Plaintiffs' characterization of the summary as an "characterization of" (among other possible interpretations) of the terms of the warrants, rather than a statement of the actual terms in the document, is a mischaracterization.

However, the email comes closer to the line as it goes on.  On the issue of the appraised value, counsel states: "A warrant holder may want to argue that after 12/31 of a given year the new updated value should apply, but the fact that the warrant must be exercised within 60 days after the notes are repaid supports the warrant language that the most recent completed appraisal must be used."  (*Id.*).  This is arguably a legal interpretation by counsel.  To the extent disclosure of this

21

portion of the email constitutes waiver of the privilege, the next question is what exactly has the client waived.

In *Fort James v. Solo Cup Co.,* 412 F.3d 1340, 1349 (Fed. Cir. 2005), the Federal Circuit (citing *In re Grand Jury Proceedings*, *supra*) as well as numerous other cases, stated, "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *See also United States v. Collis, supra,* 128 F.3d at 320 ("The scope of the waiver turns on the scope of the client's disclosure, and the inquiry is whether the client's disclosure involves the same 'subject matter' as the desired testimony"); *Edwards v. Whitaker,* 868 F. Supp. 226, 229 (M.D. Tenn. 1994) (citing *In re Grand Jury Proceedings* ) ("[I]t is well-established that 'voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject'").  Thus, if the privileged is waived, plaintiffs would be allowed discovery on communications regarding appraisals and the appraised value of the warrants.  However, further discovery on the issue of the appraised value would be irrelevant to the issues in this case.  This case is not about the value of the warrant timely exercised by Angelo Jr.

Since the remainder of the email discussion on the warrants simply does not constitute legal advice, but rather is a summary of facts from a document, this

email cannot be considered to waive attorney-client privilege and entitle plaintiffs to privileged communications.

In light of the above rulings, the Court need not address plaintiffs' argument that defendant's privilege log is vague and should be updated and redistributed.

## III.   CONCLUSION

Plaintiffs' Motion to Compel Production of Documents Withheld as Privileged is **GRANTED IN PART, DENIED IN PART**.  WNJ is directed to produce documents containing communications between WNJ and board members of AICC and AII, relevant to the RFPs, made during the time Dominic Iafrate was a board member of AICC and AII.  The motion to compel is otherwise denied.

**IT IS SO ORDERED**.

Date: June 15, 2020                         s/R. Steven Whalen
                                            R. Steven Whalen
                                            United States Magistrate Judge

<u>**CERTIFICATE OF SERVICE**</u>
    I hereby certify that a copy of the foregoing document was sent to parties of record on June 15, 2020 electronically and/or by U.S. mail.

                                            s/Carolyn M. Ciesla
                                            Case Manager