UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELO IAFRATE, SR., ET AL.,

        Plaintiffs,

v.

WARNER, NORCROSS & JUDD, LLP.,

        Defendant.

                                 /

Case No. 18-12028

SENIOR U. S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER GRANTING IN PART PLAINTIFFS' MOTION TO AUTHORIZE FILING OF A SECOND AMENDED COMPLAINT [33]**

Plaintiffs Angelo Iafrate, Sr., Dominic Iafrate, and Angelo Iafrate, Sr. as trustee of the John Iafrate Irrevocable Trust u/a/d/1/1/1988 filed a Complaint [1] on June 28, 2018 alleging Defendant Warner, Norcross & Judd, LLP. (WNJ) furnished improper legal advice during the formation of an Employee Stock Option Plan (ESOP). Plaintiffs filed an Amended Complaint [13] on July 9, 2018. On February 3, 2020, Plaintiffs filed a Motion to file a Second Amended Complaint [33]. Defendants filed a Response [34] on February 7, 2020. Plaintiffs filed a Reply [35] on February 26, 2020. For the reasons explained below, the Court **GRANTS** Plaintiffs' Motion [33] and gives them leave to file a Second Amended Complaint in accordance with this order.

**FACTUAL BACKGROUND**

A. <u>Underlying Facts</u>

In 1969, Plaintiff Angelo Iafrate, Sr. ("Angelo Sr.") established the Angelo Iafrate Construction Company ("AICC"), a road-building construction company serving metro-Detroit. AICC issued shares to Angelo Sr. and to his three sons, Dominic Iafrate, Angelo E. Iafrate ("Angelo Jr."), and John Iafrate,[1] all of whom had worked for the business at different times.

Around the year 2000, Angelo Sr., Dominic, and John moved to Florida. Angelo Jr. remained in Michigan to run AICC. In 2002, Angelo Jr. became AICC's President and Executive Director. At the time, Robert Adcock was serving as AICC's Executive Vice President.

In 2011, the family began to discuss the possibility of selling AICC. After consulting with AICC's CPA and corporate counsel, the family sold their interest in AICC to the Company's employees via an Employee Stock Ownership Plan ("ESOP"). In March 2013, AICC established an ESOP Exploratory Committee of which Adcock was a member. In July 2013, Plaintiffs were given a presentation outlining the terms on which the ESOP would purchase their stock in AICC, the proposed fair market value price, and the risks involved with seller financing an

---

[1] Plaintiff John Iafrate Irrevocable Trust was established for the benefit of Angelo Sr.'s son, John Iafrate. Angelo Sr. is its trustee.

ESOP transaction. The presentation also provided information regarding an internal rate of return, which included the issuance of warrants as additional compensation. The warrants entitled the holder to the increase in value, if any, of the per share price of common stock in excess of the Exercise Price. The Exercise Price was set at $225 per share.

Ultimately, the family agreed to finance 100% of the purchase price at below bank market interest rates. Their loan to the Company was secured by a stock pledge. The purchase price was $36.7 million. A new company was formed to which the family contributed their stock in AICC in exchange for 30,000 shares. Thereafter, the new company ("the Company") formed an ESOP which purchased all 30,000 of their shares in exchange for $36.7 million. On December 6, 2013, to finalize the transaction, the Company delivered Senior and Junior Promissory Notes ("Notes") to each member of the family, which totaled $36.7 million and provided for quarterly interest payments over ten a period of years.

In addition to the Notes, the Company issued Common Stock Warrants ("Warrants"). Each family member was issued the following number of shares: 1,687.5 shares to Angelo Sr., 2,475 shares, Angelo Jr., 2,475 shares to Dominic, and 862 shares to John. The Warrants entitled each holder the option to either: (1) purchase shares from the Company at the $225.00 Exercise Price per share; or, (2) redeem shares for cash payment in the amount of the share price in effect as of such

date ("Strike Price") less the Exercise Price. The Warrants also contained a Warrant Term provision which provided that they terminate sixty days after the date that the Company pays in full both the Senior Promissory Note and Junior Promissory Note issued to each holder. After closing, Adcock became the president of the Company and co-Trustee of the ESOP. Plaintiffs Dominic and Angelo Jr. remained on the Company's Board of Directors.

Between December 2016 and February 2017, all Plaintiffs received prepayment of their respective Senior and Junior Promissory Notes. On March 20, 2018, all Plaintiffs attempted to exercise their Warrants for cash. The Company, however, refused to make payments to Angelo Sr., John Iafrate Trust, and Dominic, claiming that their Warrants had expired sixty days after the Company had paid the outstanding principal balances on their respective Notes. The Company honored Angelo Jr.'s Warrant because he exercised his Warrant within sixty days of his Notes' payments, which occurred on or about February 2, 2018. Plaintiffs claim that the fair market value of the Company's shares is in excess of $1,200 per share, meaning that the total amount alleged owed to Plaintiffs under the Warrants is approximately $8,357,115.00.

B. <u>Warner Norcross & Judd and the Common Stock Warrants.</u>

Starting February 2013, Plaintiffs formed a relationship law firm Warner Norcross & Judd (WNJ) for the purpose of forming an Employee Stock Ownership

Plan and furnishing legal advice for the sale of AICC shares. (Am. Compl ¶ 13). Plaintiffs alleges WNJ attorney Justin Stemple formed an attorney-client relationship with each Plaintiff individually and furnished advice regarding "options for converting the equity value of the AICC organization, exclusively owned by family members, into cash remuneration." (*Id.* at ¶ 14). Plaintiff's claim that in order to avoid adverse publicity, the parties agreed to deliver the WNJ invoices to family attorney, Michael Stefani. (*Id.* at ¶ 16). Stemple drafted the majority of the ESOP documents, including the Common Stock Warrants.

Plaintiffs' contend that, because WNJ represented them personally, WNJ attorneys were duty-bound to expressly point out and inform them of the sixty-day time limit on exercising the Warrants, especially once the Company started paying the Notes in full. Plaintiffs claim that under the Intercreditor Agreement, which Mr. Stemple drafted, payments on the Senior and Junior Promissory Notes were to be paid *pro rata* to each family member. However, under Adock's direction, Angelo Sr. was paid in full on December 20, 2016. Then on February 17, 2017, Dominic and the John Iafrate Trust's Notes were paid in full. All three attempted to exercise their redemption rights under the Warrants but were refused because the sixty-day time limit had expired. On February 2, 2018, Angelo Jr.'s notes were paid, and his Warrant was issued as they were requested.

Plaintiff's claim that they did not become aware of the adverse interpretation of the Intercreditor Agreement until January 9, 2018, when Adock travelled to Florida to tell each Plaintiff in person that their Warrants had expired and would not be honored. (*Id.* at ¶ 50). Plaintiffs claim they could not have discovered this beforehand. (*Id.* at ¶ 51). Plaintiffs allege that the Company's adverse position in regards to the exercise of their Warrants is the consequence of "a. Improper advice and counsel furnished to Iafrate family members in the period 2013 through 2017 by WNJ attorneys & employees; b. Improper advice and counsel given, in a conflicting and unethical manner, and in violation of fiduciary duty, to Angelo Iafrate, Inc. and the ESOP entity in 2017 and 2018 by Warner Norcross & Judd attorneys & employees; c. Breach of fiduciary duty by the Defendants in 2013; [and] d. Breach of fiduciary duty in 2017." (*Id.* at ¶ 44).

## PROCEDURAL HISTORY

Plaintiffs' Amended Complaint [3] alleges the following: professional liability and negligence (Count I); breach of fiduciary duty (Count II), fraudulent misrepresentation (Count III), and fraudulent concealment (Count IV). (ECF No. 3). Plaintiffs' proposed Second Amended Complaint adds no new parties or claims. It merely seeks to highlight issues Plaintiffs have learned in the course of discovery to inform Defendant of the scope of their allegations. This information includes: WNJ attorneys who are alleged to be involved, more details about the nature of Plaintiffs'

and WNJ alleged attorney-client relationship, WNJ's alleged failings in drafting the Closing Document for the December 2013 transaction, Defendant attorney's alleged deception and complicity in the ESOP's dishonoring of the warrants, Defendant's alleged failure to adequately inform Plaintiff of the description and implementation of the ESOP plan, an allegation that Defendant made misrepresentations through 2018, and information regarding additional damages. (ECF No. 33).

## LEGAL STANDARD

Rule 15 of the Federal Rules of Civil Procedure permits a district court to grant a plaintiff leave to amend his complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). Because a proposed amendment is futile if it could not withstand a motion to dismiss, a motion to amend will not be granted if the opposing party demonstrates futility. *Thiokol Corp. v. Department of Treasury, State of Michigan Revenue Division*, 987 F.2d 376 (6th Cir. 1993).

## ANALYSIS

Defendant opposes Plaintiffs' Second Amended Complaint, because of bad faith and undue delay. Specifically, Defendant claims that Plaintiffs have failed to provide a basis for their failure to include the additional information in the Original or Amended Complaint and are therefore unduly seeking to add new legal theories. The Court disagrees with Defendant's arguments and addresses each objection in turn.

First, Defendant alleges that Plaintiffs are attempting to supplement their complaint with facts and legal theories already dismissed by a state court. Plaintiffs, after their companion case in this Court (*Iafrate, Sr. et al v. Angelo Iafrate, Inc. et al*, Case No. 18-11150) had been dismissed, filed a complaint in state court. That case sought to recover payment from defendants Angelo Iafrate, Inc. and Robert Adock pursuant to the terms of the Warrants. This case alleges WNJ gave improper legal advice in the formation and implementation of the ESOP and Warrants. Notably, these cases have no claims or defendants in common. Upon review, the Court determines that the state court case does not speak to Plaintiff's allegations against WNJ, therefore, there is not sufficient overlap between the cases to conclude that the additional information in the Second Amended Complaint was known to Plaintiffs at the time of filing the Original and Amended complaints.

Second, Defendant claims that Plaintiffs have failed to point to discovery that substantiates their new allegations, such as damages for stock price manipulation. However, Plaintiff claims that the newly included information is the result of 4,353 documents from initial disclosure, subpoenas, and consultation with experts. (ECF No. 35). The Court finds no reason to doubt Plaintiffs' contentions regarding how this information was found.

Third, Defendant claims Plaintiffs' allegation regarding charge backs in 2014 is illogical. In support, for of their contention that WNJ and Plaintiffs had an attorney-client relationship, Plaintiffs claim that even Adock recognized this relationship. Specifically, they claim that in 2014 Adock "charged back" the Plaintiffs for WNJ's invoices for tax advice and family matters that were erroneously sent to Adock. Plaintiffs contend that Adock did this, because he believed WNJ had given and charged Plaintiffs for advice after the December 2013 closing and through 2018. Defendant claims that this allegation is illogical because 2018 is four years after the charged backs occurred. While true, Plaintiff's ability to amend their complaint does not rise or fall upon the logic of this specific contention. Nevertheless, the Court directs Plaintiffs to further amend paragraph 64 in order to clarify their contentions before filing their Second Amended Complaint.

Fourth, Defendant also claims that Plaintiffs' request should be denied, because it is similar to a request that was denied by the court in *Minor v. Northville*

*Pub. Sch.,* 605 F. Supp. 1185 (E.D. Mich. 1985). However, the Court finds *Minor* to be a false comparison to the case at hand. In *Minor*, plaintiff sought leave to amend four to five years after the facts that gave rise to the proposed amendments arose. *Id.* at 1200. Further, plaintiff sought to add three new counts and offered "no reason for her failure to include the present allegations in her original complaint or in her first amended complaint." *Id.* at 1201. This case is distinguishable, because Plaintiffs do not seek to file new claims and have been forthcoming about how the new allegations arose.

Lastly, Defendant claims that Plaintiffs are attempting to add new individual Defendants by naming one of Defendant's attorneys as a "Defendant" in paragraph 30 in its Second Amended Complaint. Plaintiffs, however, note that this label was inadvertent and will be removed upon filing.

Considering that discovery in this case is on going and may be extended upon request, the Court finds that Plaintiffs' amendments are not in bad faith and have not been submitted with undue delay. Plaintiffs' may file a Second Amended Complaint with the correction to and clarification to paragraphs 30 and 64, respectively.

### Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Leave to file its Second Amended Complaint [33] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff further amend its Second Amended Complaint in accordance with this order before filing.

**SO ORDERED**.

Dated: March 16, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge